UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRIGHTEX BIO-PHOTONICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>L'OREAL USA, INC.,<br><br>Defendant. | Case No.  24-cv-07919-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

## I.    INTRODUCTION

On November 12, 2024, Plaintiff Brightex Bio-Photonics, LLC ("Brightex") filed the complaint in this action against Defendant L'Oreal USA, Inc. ("L'Oreal USA"), accusing L'Oreal of infringing two of its patents: U.S. Patent No. 9,842,358 ("the `358 Patent") and U.S. Patent No. 9,542,595 ("the `595 Patent"). Presently before the Court is L'Oreal's Motion to Dismiss Under Fed.R.Civ. P. 12(b)(6) ("Motion"), in which L'Oreal contends Brightex fails to state a claim of infringement of the '358 Patent upon which relief can be granted because the asserted claims of the '358 Patent (independent claim 16 and dependent claim 18) are invalid under 35 U.S.C. § 101 pursuant to *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  A hearing on the Motion was held on March 5, 2025.  For the reasons stated below, the Motion is GRANTED.[1]

## II.    BACKGROUND

### A.    The `358 Patent

The '358 Patent issued on December 12, 2017. Compl. ¶ 46 & Ex. 1 ('358 Patent).  It is entitled "Method for Providing Personalized Recommendations" and "relates to the personalized

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  recommendation of products and services." '358 Patent at 1: 6-7. In the '358 Patent, the invention
2  is described, "[b]y way of example but not limitation," "in the context of cosmetology and
3  specifically with respect to the cosmetic improvement of a person's face." *Id.* at 1: 8-10.

4      The specification describes "a process by which recommendations may be selected for a
5  user." *Id.* at 1:14-16. First, "a user submits an image of her face and responses to a questionnaire."
6  *Id.* at 2: 23-5. "[A] typical electronic device . . . used to capture a user's image and questionnaire
7  responses" "may be a mobile telephone, smart phone, tablet computer, personal digital assistant (
8  PDA ), laptop or other device, preferably with at least a camera, display, communication
9  capability and a means of data entry." *Id.* at 2: 28-33. The user is instructed "where to put her face
10  in the image" by a "photo guide[,]" which allows the user to "take an image of her face with
11  preferred dimensions for use in the recommendation process." *Id.* at 2: 33-37.

12      After the user has submitted an image and questionnaire responses, "the user's image is
13  analyzed to produce measurements." *Id.* at 2: 57-59. "Any sufficient method or means of image
14  processing may be used to analyze the user's image to identify the facial characteristics and
15  features of the user's face. " *Id.* at 2: 58-61. Facial features that may be measured include
16  "number of crow's feet[,]" "number of deep lines[,]" "number of fine lines[,]" "number of age
17  spots" and "percent of a user's face covered by age spots." *Id.* at 2: 63-3: 10. The measurements
18  and questionnaire responses are then used to create a "user profile" that is "used to locate
19  reference information within an 'age' category." *Id.* at 3: 29-35. The "reference information"
20  "preferably . . . comprises previously stored data about a population." *Id.* at 3:36. "For example,
21  the user's 'age' category may comprise information from a population of people that are the same
22  age as the user." *Id.* at 3: 49-51. The user's measurements are then compared to the reference
23  information to determine the severity of the feature (*e.g.*, deep line count) as compared to the
24  general population in the user's age group) (*e.g.*, low, medium or high). *Id.* at 3: 52-57. These
25  results are then used to make recommendations to the user, which "may relate to skincare,
26  lifestyle, products or other factors that affect a person's appearance." *Id.* at 4: 7-8.

27      Claim 16 of the '358 Patent recites:

28      A computerized method for providing prioritized skin treatment

2

recommendations to a user, comprising:

receiving from an electronic device image data of a user's face, wherein the electronic device comprises a camera and a display, wherein the image data is obtained via said camera, and wherein said electronic device presents on the display a photo guide indicating how the user's face should be positioned with respect to the camera when the image data is obtained;

transforming via a computer said image data via image processing into measurements in order to identify at least two skin characteristics of the user from the received image data;

calculating a severity rating for each of the at least two user skin characteristics by:

accessing stored population information comprising measurements for at least two skin characteristics of a population of the same type as the at least two skin characteristics of the user, wherein each of the measurements for the at least two population skin characteristics comprises a mean value and a standard deviation value;

comparing each of the measurements of the at least two user skin characteristics to the measurements of same type population skin characteristic;

determining by how much each of the measurements of the at least two user skin characteristics deviates from the mean value and the standard deviation value of the same type population skin characteristic;

assigning higher severity rating to the user skin characteristic which deviates furthest than at least one standard deviation of the same type population skin characteristic; and

for a subset of the user skin characteristics with the highest severity rating, selecting [one] or more skin treatment recommendations from stored skin treatment recommendations based on the subset of the user skin characteristic with the highest severity rating; and

providing to the electronic device the selected one or more skin treatment recommendations.

'358 Patent, Claim 16.

Claim 18 of the `358 Patent claims:

The method of claim 16, wherein at least one of the at least two user skin characteristics and the at least two population skin characteristics comprise one or more of: number of wrinkles, number of age spots, quality of age spots, percentage of facial area covered by age spots, number of hyperpigmentation spots, quality of hyperpigmentation spots, percentage of facial area affected by hyperpigmentation spots, number of crow's feet, number of fine lines, number of deep lines,

United States District Court
Northern District of California

> oiliness of skin, dryness of skin, pigment intensity, pigment darkness, pigment evenness, visibility of pores, number of large pores, lip color, lip line curvature, lip border strength, lip line smoothness, lip fullness, acne lesion visibility, color of acne scars, visibility of acne scars, presence of melasma, percentage of facial area covered by melasma, darkness of melasma, ultraviolet damage, and skin tone.

'358 Patent, Claim 18.

## B.    '358 Prosecution History

The application that led to the issuance of the '358 Patent was filed by a San Francisco-based start-up skin care company, Own, Inc., on June 19, 2012.  Compl. ¶¶ 44-46.  According to Brightex, Own and Brightex had "entered into a contract pursuant to which Own hired [Brightex] to create and license software to serve as a diagnostic tool for use with Own's proposed skin care products to perform automated skin analysis and skin recommendations technology as requested by Own."  *Id.* ¶ 45.  "Before the completion of the prosecution of the application, Own transferred the ownership of the application to [Brightex]."  *Id.*  ¶ 46; *see also id.* ¶ 47 ("[Brightex] has been the proper owner by assignment since at least April 17, 2014, and hence, owns all right, title, and interest in the `358 Patent until its expiration date . . . .").

"During prosecution, the Patent and Trademark Office initially rejected the claims of the `358 Patent under 35 U.S.C. § 101, contending that the claimed invention is directed to the abstract idea of providing recommendations."  *Id.* ¶ 60; *see also* Declaration of Jessica J. Delacenserie in Support of Defendant L'Oreal USA, Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ("Delacenserie Decl."), Ex. A (`358 Patent prosecution history) at 267 (August 21, 2014 office action rejecting all claims under 35 U.S.C. § 101 as being directed to nothing more than "the abstract idea of providing recommendations.").

In response, the applicant added new claim 37 (later issued as claim 16).  Delacenserie Decl."), Ex. A (`358 Patent prosecution history) at 253; *see also* Delacenserie Decl., Ex. B (chart showing claim 37 amendments).  Claim 37 originally claimed:

> A computerized method for providing prioritized skin treatment recommendations to a user, comprising:
>
> receiving an image of a user's face via a network;
> identifying at least two skin characteristics of the user from the received image;

4

1  calculating a severity rating for each of the at least two user skin characteristics by:

2  accessing stored population information comprising at least two skin characteristics of a population of the same type as the at least two skin characteristics of the user, wherein each of the at least two population skin characteristics comprises a mean value and a standard deviation value;

comparing each of the at least two user skin characteristics to the same type population skin characteristic;

determining by how much each of the at least two user skin characteristics deviates from the mean value and the standard deviation value of the same type population skin characteristic;

assigning higher severity rating to the user skin characteristic which deviates furthest than at least one standard deviation of the same type population skin characteristic; and

for a subset of the user skin characteristics with the highest severity rating, selecting one or more skin treatment recommendations from stored skin treatment recommendations based on the subset of the user skin characteristic with the highest severity rating; and

providing the selected one or more skin treatment recommendations to the user.

*Id.*

The applicant argued that the amended claims, including claim 37, should be allowed and the previous rejection under § 101 be withdrawn because they "contain[ed]  meaningful limitations that represent[ed] [a] sufficiently inventive concept."  *Id.* at 256.  In particular, the applicant asserted that the amended claims "recite[d] specifically how the recommendations are selected and prioritized based on a specifically calculated severity rating."  *Id.*  However, the examiner again rejected the claims in an office action dated December 31, 2014, explaining:

[T]he claims as a whole, considering all claim elements both individually and in combination, do not amount to significantly more than an abstract idea. The claims are directed to the abstract idea of providing recommendations. The additional elements or combination of elements in the claims other than the abstract idea per se amounts to no more than: (i) mere instructions to implement the idea on a computer, and/or (ii) recitation of generic computer structure that serves to perform generic computer functions that are well-understood, routine, and conventional activities previously known to the pertinent industry. Viewed as a whole, these additional claim elements do not provide meaningful limitations to transform the abstract idea into a patent eligible application of the abstract idea such that the claims amount to significantly more than the abstract idea

5

1    itself.

2    *Id.* at 237-238.

3    On March 19, 2015, the applicant again amended the claims to try to establish that the

4    invention was more than an abstract idea. *Id.* at 213-232; *see also* Delacenserie Decl., Ex. B (chart

5    showing claim 37 amendments).  The examiner again rejected the claims under § 101 in an Office

6    Action dated April 22, 2015.  Delacenserie Decl., Ex. A ('358 Patent prosecution history) at 194-

7    199.

8    Finally, on July 21, 2017, the applicant amended the claims again, amending the

9    independent claims (including claim 37) to add "wherein said electronic device presents on the

10    display a photo guide indicating how the user's face should be positioned with respect to the

11    camera when the image data is obtained" (and also retracting certain earlier amendments).

12    Delacenserie Decl., Ex. A ('358 Patent prosecution history) at 48–49; Delacenserie Decl., Ex. B

13    (chart showing claim 37 amendments). On August 4, 2017, the examiner allowed all pending

14    claims, finding:

15    > With respect to 35 U.S.C. § 101, it is concluded that while a photo
16    > guide in and of itself is a generic and conventional element, when
17    > used as claimed to assist in obtaining image data for processing
      > measurements to identify measurements to identify skin
      > characteristics, it constitutes a technological solution and
18    > significantly more than the abstract idea. *See Bascom Global Internet
      > Services v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

19    Delacenserie Decl., Ex. A at 22.

20    **C.    Section 101 and *Alice***

21    Under 35 U.S.C. § 101, certain categories of inventions are eligible for patent protection:

22    "process[es], machine[s], manufacture[s], or composition[s] of matter." 35 U.S.C. § 101.  The

23    Supreme Court has "long held that this provision contains an important implicit exception: Laws

24    of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank*

25    *Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,

26    569 U.S. 576, 589 (2013)).  "These three categories of subject matter are excepted from patent-

27    eligibility because 'they are the basic tools of scientific and technological work,' which are 'free to

28    all men and reserved exclusively to none.' " *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F.

United States District Court
Northern District of California

6

Supp. 3d 1002, 1011 (N.D. Cal. 2017) (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, *Inc.*, 566 U.S. 66, 71 (2012) (citations omitted)). The Court has cautioned, however, that "too broad an interpretation of this exclusionary principle could eviscerate patent law" because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. Thus, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 71).

The *Alice* Court applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 573 U.S. at 217.

### D.    The Complaint

In the Complaint, Brightex asserts that L'Oreal has willfully infringed Brightex's '358 and '579 patents. Compl. ¶¶ 83-126. As to the '358 Patent, Brightex asserts infringement of claims 16 and 18. Brightex describes in the complaint the development of its "advanced and innovative technology relating to the recognition and computerized analysis of facial features" by Raj Chhibber. *Id.* ¶ 13. According to Brightex:

> 13. Chhibber . . . determined that there was an unfulfilled need to improve the ability to scan facial skin features and help identify skin characteristics and conditions that could be treated or otherwise remedied. He also realized that the skincare industry was far behind in using technology to improve its products and services. For example, at the time of [Brightex's] founding, the industry was still visually comparing images before and after product application with no quantification of skin parameters. Visual grading was used, and books were published to train staff and dermatologists to align their

7

grading scores. This deficient process was known as "blind dermatology" by many researchers in the field. Chhibber and the team he assembled at [Brightex] determined that even well-trained dermatologists could not agree on grading and classification with the accuracy required to prove product efficacy.

14. Chhibber researched the matter and determined that inspecting a face for characteristics and conditions required one to closely examine the skin for very small imperfections, which was the best way to conduct a useful diagnosis. This lead Chhibber and his team to develop software for use in a facial image scanner, which [Brightex] called the "Clarity Pro" system. This software enabled a facial image scanner to identify bacteria-clogging pores, show where wrinkles are forming, and identify skin damage caused by the sun. Chhibber understood that, with this [Brightex] technology, doctors and aestheticians would be able to recommend creams, lotions and other skin treatment products based on skin condition, and then show patients "before and after" effects of such recommendations. In addition, companies, such as cosmetic companies, could test and quantifiably demonstrate the benefits of such products to their customers.

15. Although the Clarity Pro facial image scanner was a technology targeted for use by beauty spas and dermatologists, Chhibber envisioned refining [Brightex's] technology to reduce its size and cost and improve its performance so that it could be used in cellphones and laptop type devices by ordinary end-users for personal use. The advanced cameras that smart devices used provided consumers with the ability to take high-quality photography at home. This, coupled with advances in artificial intelligence (AI), allowed [Brightex] to develop technology that could perform advanced skin measurements and analysis on images or "selfies" taken with commercially available smartphones in order to accurately assess skin conditions to recommend the correct cosmetics and skincare treatments.

*Id.* ¶¶ 13-15.

In addition to alleging facts about L'Oreal's infringement of Brightex's patents, the complaint contains a section entitled: "The Innovation of the Asserted Patents." *Id.* ¶¶ 53-77. As relevant here, that section alleges as follows:

53. Claim 16 of the asserted `358 Patent is directed to a novel method for receiving an image of the skin of a person's face, then providing a computer analysis of that image data to identify its skin characteristics that deviate substantially from a group of reference data relating to those skin characteristics, and then providing recommendations to a user for treating those skin conditions based upon the "severity" of the deviations or "ratings." The Claim requires the method to use a "photo guide" to position the capture of the facial image in the camera display.

54. Thus, the claimed invention is not directed to the abstract idea of providing recommendations to a user about a product per se.

8

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

55. Moreover, in the claimed invention, a computer is not invoked merely as a tool, using its generic processes. Instead, it is directed at a specific computerized process that provides for a particular, improved way to acquire an image of a person's face, and then analyze that image data to identify at least two user skin characteristics, and then calculate the extent to which the user's data for at least these two skin characteristics deviate from stored data regarding the same type of skin characteristics (i.e. "severity rating") for a specific group of people.

56. The provided skin treatment recommendations, therefore, are based, in part, on the user skin characteristics with highest severity ratings, as determined by a computerized analysis of photo image data, and not previously performed by the use of pen and paper. In particular, the claims require the specified process to be performed using an "electronic device" that "comprises a camera and display."

57. The claims focus on a specific computerized method for providing skin treatment recommendations to a user based, in part, on the extent of the deviation of the severity of the user's skin characteristics compared to the same type to of skin characteristics for a comparable group of people.

58. The claimed specific computerized process solved the problem of automatically identifying a user's most severe skin conditions and then recommending a treatment for the condition based, in part, on the highest severity rating of the skin condition. The claims are not directed at the abstract idea of providing skin treatment recommendations to users in general, merely by invoking generic processes and equipment.

59. The asserted claims improved upon the technology for acquiring and then analyzing facial data for prioritizing product recommendation to treat skin conditions, based in part on the perceived severity of skin condition problems. The specific steps set forth in the asserted claims state how the claims improve the method for identifying the severity of a skin condition and then recommending a treatment for improving the condition, not achieving the recommendation of a product. The asserted claims, therefore, recite a technical solution to a problem arising in the realm of computing networks. During prosecution, the Patent and Trademark Office initially rejected the claims of the `358 Patent under 35 U.S.C. § 101, contending that the claimed invention is directed to the abstract idea of providing recommendations. The `358 Patent issued in 2017, which means this Patent was examined after, and in view of, the Supreme Court's Alice Corp. decision on Section 101 of the Patent Act.

61. The patentee responded to the aforementioned rejection by pointing out that the invention is a novel computerized method of providing prioritized skin treatment recommendations to users based on a severity rating calculation.

62. The patentee further responded that the pending claims of the application for the `358 Patent contain meaningful limitations that represent a sufficiently inventive concept, and that they recite

9

specifically how the recommendations are selected and prioritized based on a specifically calculated severity rating.

63. In addition, during prosecution, the claims were eventually amended to require the display of the camera used to perform the specific process to have a "photo guide indicating how the user's face should be positioned with respect to the camera when the image is obtained." These limitations also preclude a pen-and-paper method of implementation.

64. In view of the patentee's responses to the PTO's office actions and the amendments to the pending claims of the application for the `358 Patent, the PTO withdrew the rejection of the claims pending claims, including the now issued Claims 16 and 18, under 35 U.S.C. § 101.

Compl. ¶¶ 53-64.

### E.    Contentions of the Parties

#### 1.  Motion

In the Motion, L'Oreal contends the claims of the '358 Patent are invalid under § 101 because they "are directed to the abstract idea of recommending treatments based on the severity of a person's skin characteristics, and rely solely on generic computer components to carry out that idea." Motion at 12. Applying step one of the *Alice* test, L'Oreal contends a claim is "directed to" an abstract idea if the abstract idea is the "focus" of the claim," and further asserts that this requirement is met as to claim 16. *Id.* In particular, L'Oreal asserts:

[C]laim 16 recites nothing more than a method of: (1) obtaining an image of a user's face, (2) identifying at least two skin characteristics of the user, (3) comparing the identified user skin characteristics to "normal" skin characteristics reference data to calculate severity ratings, and (4) providing treatment recommendations for user skin characteristics with the highest severity rating.

*Id.* at 13.  According to L'Oreal, "[t]hese steps are all logical and conventional aspects of recommending treatments based on the severity of a person's skin characteristics in both the real and electronic world." *Id.*

Furthermore, L'Oreal asserts, "because each step is performed by generic computer components[,]" "this is not a method 'necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of' computerized skin analysis." *Id.* (citing *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257 (Fed. Cir. 2014); *Credit Acceptance*

10

1    *Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)). L'Oreal makes four specific

2    arguments to support this point.

3         First, it contends that "for a computer to determine the severity of skin characteristics, it

4    logically follows that an image (or 'image data') must be obtained [and that] the subject of the

5    image—here, 'the user's face'-- 'should be positioned' in a particular way 'when the image data is

6    obtained.'" *Id.* at 13. According to L'Oreal, the "use of a photo guide" recited in claim 16 "can be

7    achieved without a computer and is incidental to the abstract idea of recommending treatments

8    based on the severity of a person's skin characteristics." *Id.* Therefore, L'Oreal asserts, "the use of

9    a generic 'electronic device'—such as a 'mobile telephone, smart phone, tablet computer, personal

10   digital assistant (PDA), laptop or other devices[] with at least a camera, display,' '358 Patent at

11   2:27-40—to position and capture an image of a user's face does not make these processes any less

12   abstract." *Id.* at 14 (citing *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016);

13   *Dental Monitoring*, *SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2024 WL 2261931, at *4-5

14   (N.D. Cal. May 16, 2024); *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002,

15   1019 (N.D. Cal. 2017)).

16        Second, L'Oreal argues that "the use of a computer to identify skin characteristics and/or

17   measurements thereof—*i.e.*, to collect information—does not make these processes any less

18   abstract." *Id.* at 14-15. According to L'Oreal, "[a]lthough claim 16 specifically requires

19   'transforming via a computer said image data via image processing into measurements in order to

20   identify' such characteristics, '358 Patent at claim 16, the specification makes clear that the

21   purported invention is not directed to a specific or improved type of image processing, nor does

22   the claimed 'image processing' require the use of a non-generic computer[.]" *Id.* at 14 (citing '358

23   Patent at 2:58-63 ("In step 102, the user's image is analyzed to produce measurements. … Any

24   sufficient method or means of image processing may be used to analyze the user's image to

25   identify the facial characteristics and features of the user's face.").

26        Third, L'Oreal argues, the comparison of skin characteristics to the mean value in claim 16

27   is simply "the logical way to determine variance of such characteristic from the norm (and thus the

28   severity of the characteristic)." *Id.* at 15. According to L'Oreal, "[t]hese too are merely ideas

United States District Court
Northern District of California

'that the Federal Circuit has consistently found to be abstract.'" *Id.* at 15-16 (quoting *Procter & Gamble*, 288 F. Supp. 3d at 1017-1018). Furthermore, L'Oreal argues, "the limitations of claim 16 'broadly cover manual determination and comparison of defect severity' using 'purely functional language.'" *Id.* at 16 (quoting *Procter & Gamble*, 288 F. Supp. 3d at 1019–20 (citation omitted)). "And Plaintiff readily acknowledges that the purpose of such limitations is to improve upon existing ways to 'identify skin characteristics and conditions that could be treated'—*e.g.,* by 'visually' 'inspecting a face for characteristics and conditions'—as opposed to improving the functioning of a computer." *Id.*

Finally, L'Oreal argues that "providing treatment recommendations for sufficiently severe skin characteristics—here, the ones determined to have 'the highest severity rating'—is merely incidental to the above-described abstract processes and similarly abstract." *Id.* at 17.

At step two of the *Alice* test, L'Oreal argues that "none of the claim elements [of claim 16], assessed individually, supply the requisite 'inventive concept.'" *Id.* (citing *Procter & Gamble*, 288 F. Supp. 3d at 1026). As in *Procter & Gamble*, L'Oreal contends, the specification of the '358 Patent "confirms the generic nature of [the claim] elements." *Id.* at 18 (citing *Procter & Gamble*, 288 F. Supp. 3d at 1026). L'Oreal asserts, "The specification does not once mention the claimed 'computer,' much less suggest that the relevant functions cannot be performed on any general-purpose computer." *Id.*

L'Oreal also argues that the "inventive concept" requirement is not met because "[t]he elements of claim 16 are . . . arranged in a conventional and generic way." *Id.* According to L'Oreal, "[n]othing in the specification supports Plaintiff's allegation that the claims 'recite a technical solution to a problem arising in the realm of computing networks.'" *Id.* at 18-19 (quoting Compl. ¶ 59). Instead, "the specification consistently describes the purported invention as 'provid[ing] personalized recommendations that are intended to improve a person's cosmetic appearance,' with only sparse references to generic computer components that can be used to achieve this." *Id.* at 19 (quoting '358 Patent at 1:14–18). According to L'Oreal, "[t]he specification is also void of any suggestion that the claimed method would in any way improve the functioning of such generic computer components." *Id.* And finally, L'Oreal asserts that

1    "'[r]egardless of whether the steps in claim [16] have previously been combined' (they have),

2    'they do not amount to significantly more than acquiring and analyzing information' and, thus, the

3    combination thereof does not 'encompass an inventive concept.' " *Id.* (quoting *Procter &*

4    *Gamble*, 288 F. Supp. 3d at 1028–29).

5         L'Oreal contends claim 18 also does not contain any "inventive concept" under *Alice. Id.*

6    In particular, "[i]t does not add any steps to the method of claim 16, nor does it require the use of

7    any new or specialized computer components, nor does it provide any elements that would

8    improve the functioning of the generic computer components recited in claim 16." *Id.*

9         For these reasons, L'Oreal argues that the asserted claims of the '358 Patent are invalid

10    under 35 U.S.C. § 101.

**2. Opposition**

12         In its Opposition, Brightex rejects L'Oreal's argument that the asserted claims of the '358

13    Patent are invalid because they are directed to an abstract idea.  Opposition at 1.  According to

14    Brightex, L'Oreal has oversimplified the limitations of claim 16, which claims a "patentable,

15    technological solution in the field of computerized skin analysis and an improvement over the

16    existing techniques for obtaining image data for processing measurements to identify skin

17    characteristics." *Id.* at 1-2.  Brightex further contends "[t]he photo guide is used in a process

18    specifically designed to achieve improved facial data acquisition and subsequently an improved

19    identification of skin defects and the severity of those defects." *Id.* at 2.  According to Brightex,

20    "[t]he evidence also confirms that the Asserted Claims recite individual limitations that are

21    unconventional and that, taken together, the combination provides an inventive concept that goes

22    far beyond merely claiming the allegedly abstract idea." *Id.*

23         Brightex argues that L'Oreal's characterization of claim 16 as involving four steps is

24    inaccurate, failing to take into account many of the limitations of the claim. *Id.* at 6.  For example,

25    the first step described by L'Oreal – "obtaining an image of the user's face[,]" Motion at 4 --

26    makes "[n]o mention . . .  of a photo guide, an electronic device, image data, and the

27    transformation of image data into measurements." *Id.* Furthermore, Brightex contends, "L'Oreal's

28    factual statements concerning what dermatologists have been doing 'for decades' and what

13

1  calculations have been done on images of faces is entirely unsupported." *Id.* (citing Motion at 5).

2        Brightex also argues that L'Oreal's reliance on the prosecution history is improper to the

3  extent it suggests that the Court need only consider the one limitation that the Examiner found was

4  not abstract – the photo guide – in determining whether the claims are invalid.  *Id.* at 6-7. Rather,

5  Brightex contends, the Court must consider the claim as a whole when deciding whether it is

6  directed to an abstract idea.  *Id.* at 7.

7        Furthermore, Brightex argues, L'Oreal's assertion "that a photo guide is 'as generic and

8  conventional when used as claimed' and cannot provide an inventive concept[,] Motion at 10[,] . .

9  . is as close as L'Oreal gets to discussing why the Examiner was incorrect in his reasons for

10  allowance, and L'Oreal merely provides a conclusory statement to the contrary."  *Id.* at 7.

11  Brightex contends "this is a factual allegation concerning what was routine, well-understood, or

12  conventional at the time of the invention within the field of computerized skin analysis and

13  personalized recommendations which must be resolved in Brightex's favor at the 12(b)(6) stage,

14  and for which L'Oreal provides no evidence or prior art support."  *Id.* at 7-8. Brightex further asserts

15  that at this stage of the case, it "need only show plausibility that individual elements, or that the

16  claimed combination is not well-understood, routine, or conventional activity for questions of fact

17  to preclude dismissal." *Id.* (citing *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d

18  1121, 1128 (Fed. Cir. 2018)).  Brightex argues that "[t]he photo guide limitation, as claimed,

19  meets this plausibility standard alone and in combination with other limitations of claim 16,

20  precluding dismissal."  *Id.*

21        Brightex also points to other statements by L'Oreal "concerning the state of the art and

22  what was routine and conventional, each [of] which conflict with the factual statements made in

23  the Complaint:"

24        • "[L'Oreal's oversimplified limitations] are all logical and conventional aspects of

25             recommending treatments based on the severity of a person's skin characteristics in

26             both the real and electronic world." *Id.* (citing Motion at 13).

27        • "[I]n order to determine the severity of skin characteristics, it logically [follows]

28             that at least two skin characteristics must be identified from the image." *Id.* (citing

United States District Court
Northern District of California

1    Motion at 14).

2    - "All such 'measurements' can be (and have long been) determined visually, e.g.,

3    by a skin care professional, without the use of a computer." *Id.* (citing Motion at

4    15).

5    - "[in] order to determine the severity of a person's skin characteristics, the variance

6    of such characteristics from the norm must be determined." *Id.* (citing Motion at

7    15).

8    - "The elements of claim 16 are also arranged in a conventional and generic way."

9    *Id.* (citing Motion at 18).

10   In addition, Brightex asserts that "the '358 Patent has been cited and utilized by examiners as

11   inventive and valid around the world, including against a L'Oreal patent application." *Id.* at 9

12   (citing Opposition Ex. A, dkt. no. 28-1 (WO2022/232627)).

13          Applying the *Alice* test, Brightex argues that at step one, the asserted claims are not

14   directed at an abstract idea because they "do not simply recite the desired result of 'recommending

15   treatments based on the severity of a person's skin characteristics,' but instead recite a specific

16   improved solution for accomplishing that goal and are thus directed to patent eligible subject

17   matter." *Id.* at 10.  Brightex rejects L'Oreal's argument that the photo guide limitation "can be

18   achieved without a computer and is merely incidental to the alleged abstract idea." *Id.* at 13

19   (citing Motion at 13).  According to Brightex, when considering the entirety of the claim, the

20   "photo guide" limitation "transforms the recited electronic device into a specialized device (i.e., a

21   miniaturized version of Brightex's Clarity Pro device) designed to capture image data in a

22   particular way to better facilitate the skin treatment recommendation process." *Id.* at 13-14.

23          Brightex argues that L'Oreal's reliance on the *Procter & Gamble* case in its step one

24   analysis is misplaced because in that case, there was no photo guide limitation.  *Id.* at 14-15.

25   Brightex also argues that *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir.

26   2016) is distinguishable because it "did not concern images or photo guides[.]" *Id.* at 15.  It

27   further asserts that the *Dental Monitoring* case cited by L'Oreal is not on point because it was

28   decided on summary judgment and therefore, "factual allegations [were] more appropriately

United States District Court
Northern District of California

1  presented, such as what orthodontists at the time of the invention considered routine." *Id.* at 15-16

2  (citing *Dental Monitoring SAS v. Align Tech., Inc*., 2024 WL 2261931 (N.D. Cal. May 16, 2024)).

3  In addition, Brightex asserts, a critical difference between the *Dental Monitoring* case and this

4  case is "the fact that [in *Dental Monitoring*] 'the patent's specification concedes that this analysis

5  was conventionally performed by an orthodontist, via in-person visual inspection or through

6  review of patient-provided images[ ]' whereas "[t]here is no such disclosure in the '358

7  specification that the analysis detailed in claim 16 was done by dermatologists back in 2012, nor

8  has L'Oreal identified such disclosure." *Id.*  at 16.

9  At step two of the *Alice* test, Brightex argues that it adequately alleged an inventive

10  concept in its complaint and therefore, the case must survive L'Oreal's motion to dismiss under

11  *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018).   In

12  particular, Brightex argues that because there are "concrete allegations" in its complaint that

13  "'individual elements and the claimed combination are not well-understood, routine, or

14  conventional activity,'" questions of fact preclude dismissal at the motion to dismiss stage.  *Id.* at

15  16-17 (quoting *Aatrix*, 882 F.3d at 1128).  According to Brightex, the allegations here, as in

16  *Aatrix*, " 'supplie[d] numerous allegations related to the inventive concepts present in the claimed

17  form file technology,' and 'describe[d] the development of the patented invention, including the

18  problems present in prior art.' "  *Id.*  at 17 (quoting *Aatrix*, 882 F.3d at 1127).  In particular,

19  Brightex points to its allegations relating to "the deficient process of visual grading and training

20  dermatologists to align their grading scores, and their inadequacy, to prove product efficacy[;]"

21  "the development of the patented invention, including the creation of the Clarity Pro facial image

22  scanner and subsequent reduction in size (and advancement in AI technology) allowing for use in

23  commercial cellphones[;]" and the "section in the Complaint entitled Innovation of the Asserted

24  Patents[.]"  *Id.* (citing Compl. ¶¶ 13-15, 53-64).  According to Brightex, L'Oreal ignored these

25  allegations in the Motion.  *Id.*

26  Brightex argues that an inventive concept, as disclosed in the Complaint, can be found in

27  two of the claim limitations:  "(1) the 'photo guide' to position the capture of the facial image . . .

28  and (2) the 'severity rating' calculated using the user's data for at least two skin characteristics and

16

their deviation from stored data regarding the same type of skin characteristics." *Id.* (citing

Compl. ¶¶ 53, 55, 57).  According to Brightex, even though the Examiner found that the photo

guide limitation provided "significantly more than the abstract idea," L'Oreal never mentions this

limitation in its step two discussion.  *Id.*  Brightex further asserts that it will be able to show that

the claim elements are arranged in a novel way and that L'Oreal's conclusory assertion to the

contrary is not sufficient to meet its burden.  *Id.*  at 17-18.

Finally, Brightex argues that L'Oreal's Motion "threatens the viability of their own

patents, including the patent L'Oreal contends its Accused Instrumentalities emanate." *Id.*  at 18-

19.

### 3.  Reply

In its Reply, L'Oreal reiterates its argument that the invention claimed in the '358 Patent

boils down to four steps that amount to no more than an abstract idea.  Reply at 1.  It rejects

Plaintiff's argument that more than an abstract idea is claimed because the patent recites a

"technical solution" comprising "specific" requirements that were "unconventional" at the time of

the claimed invention.  *Id.* (citing Opposition at 9–13, 16–18).  L'Oreal contends Brightex offers

no authority to support its "apparent position that a claim is eligible for patent protection simply

by virtue of being technical, specific, or unconventional" and "instead cherry-picks language from

a handful of cases finding claims directed to improvements in the functioning of computers to

recite more than an abstract idea, which are, of course, inapplicable here." *Id.*

L'Oreal argues that the asserted claims of the '358 Patent are not directed at improvements

in the functioning of a computing device sufficient to transform an abstract idea into patentable

subject matter.  *Id.* at 2-4.  It asserts that the '358 Patent describes "two computing devices to

carry out the claimed method: (1) an 'electronic device compris[ing] a camera and a display'—

which, according to the specification, 'may be a mobile telephone, smart phone, tablet computer,

personal digital assistant (PDA), laptop or other device'—and (2) a 'computer'—which the

specification does not once mention." *Id.*  at 2. But as argued in the Motion, "the claimed method

is not directed to any improvement in the functioning of either of these generic computing

devices[,]" according to L'Oreal.  *Id.*  Nor does Brightex rebut L'Oreal's position, L'Oreal asserts.

1  Instead, L'Oreal asserts, "Plaintiff specifically concedes that any improvements provided by the

2  claimed method are to the consumer experience[.]" *Id.* (citing Opposition at 9).

3          L'Oreal further asserts that Brightex offers no authority to support its contention that a

4  "technical" or "technological" solution is sufficient to show an "improvement" in the functioning

5  a computer device. *Id.* at 3. According to L'Oreal, "Plaintiff appears to conflate (or perhaps,

6  confuse) a solution that is 'technical' in nature with a 'specific means or method that improves the

7  relevant technology,' as discussed in the cited *Cardionet* and *Dental Monitoring* cases." *Id.*

8  (citing Opposition at 9:25–10:14 )(quoting *Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358,

9  1368 (Fed. Cir. 2020); and citing *Dental Monitoring SAS v. Align Tech., Inc.*, 2024 WL 2261931,

10  at *7). According to L'Oreal, the *Cardionet* and *Dental Monitoring* cases on which Brightex

11  relies did not find inventive content based on mere specificity but instead, because both involved

12  claims directed to improving the functioning or operation of a particular device, whereas this case

13  involves no such allegations. *Id.* at 4.

14          L'Oreal also rejects Brightex's contention that in the Motion it has oversimplified the

15  claims of the '358 Patent and ignored limitations relating to "the photo guide, an electronic device,

16  image data and the transformation of image data into measurements." *Id*. at 4-5 (citing Opposition

17  at 6:14–16). L'Oreal contends this assertion is untrue, pointing to discussion of these limitations in

18  the Motion. *Id*. at 5.

19          As to unconventionality, L'Oreal contends Brightex's reliance on the *Aatrix* case and

20  *Berkheimer v. HP Inc*., 881 F.3d 1360 (2018) is misplaced. According to L'Oreal, Brightex

21  mischaracterizes these cases when it suggests that they "stand[] for the proposition that any and all

22  'factual statements concerning what was well understood, routine, and conventional' are 'directly

23  relevant' to whether claims 'contain inventive components[.]'" *Id.* (quoting Opposition at 4)

24  (citing *Berkheimer v. HP Inc*., 881 F.3d 1360 (2018)). L'Oreal also rejects Brightex's assertion,

25  based on these cases, that on a 12(b)(6) motion, it "need only show plausibility that individual

26  elements, or that the claimed combination is not well-understood, routine, or conventional activity

27  for questions of fact to preclude dismissal." *Id.* at 6 (quoting Opposition at 8) (citing *Aatrix*, 882

28  F.3d at 1128). Instead, L'Oreal asserts, "in both cases, the Federal Circuit's findings that factual

United States District Court
Northern District of California

1    disputes existed regarding what was "conventional" were directly and specifically based on well-

2    pled allegations that the claims constituted *improvements to the functioning or operation of a*

3    *computing device*." *Id.* at 6 (emphasis in original).

4        L'Oreal rejects Plaintiff's assertion that it relies in its Motion on factual statements about

5    what was conventional at the time of the claimed invention that conflict with the allegations in the

6    complaint. *Id.* at 7 (citing Opposition at 6). According to L'Oreal, although Plaintiff "takes issue

7    with 'L'Oreal's factual statements concerning what dermatologists have been doing "for decades"

8    and what calculations have been done on images of faces,' . . . *i.e.*, that they 'inspect a person's

9    face to identify characteristics that vary from the norm and, where the variance is sufficiently

10   great, they prescribe treatment,' " "this is entirely consistent with statements in the Complaint."

11   *Id.* (citing Opposition at 4, 6). L'Oreal argues further that although Brightex "apparently disputes

12   basic concepts such as whether 'at least two skin characteristics must be identified,' and 'the

13   variance of such characteristics from the norm must be determined,' to 'determine the severity of a

14   person's skin characteristics,' [it] cannot point to any facts contradicting such logic." *Id.*

15       Finally, L'Oreal argues that displaying a "photo guide" does not transform the claimed

16   method into patentable subject matter, even though the examiner reached a contrary conclusion.

17   *Id.* at 7-10. L'Oreal contends the "photo guide" is a "simple graphic" that does not require a

18   specialized device and does not purport to solve any particular technological problem identified in

19   the patent. *Id.* at 8. According to L'Oreal, "this is because, according to Plaintiff's own

20   statements, the whole point of the claimed method is to 'provid[e] prioritized skin treatment

21   recommendations to a user' 'using their own electronic device,' as opposed to a specialized

22   device." *Id.* (citing '358 Patent claim 16; Opposition at 9; Compl. ¶¶ 14-15). Thus, Plaintiff's

23   assertion in the Opposition that "the photo guide is a limitation that transforms the recited

24   electronic device into a specialized device (i.e., a miniaturized version of Brightex's Clarity Pro

25   device)[ ]" is incorrect, L'Oreal asserts, and conflicts with the allegations in the complaint. *Id.* at

26   9 (citing Compl. ¶ 15; Opposition at 13-14). Furthermore, it argues, "these disclosures (and lack

27   thereof) are on all fours with those the Federal Circuit routinely finds indicative of an abstract idea

28   without any 'inventive concept.'" *Id.* at 9-10 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823

United States District Court
Northern District of California

1   F.3d at 612–14 (internal citations omitted); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359,

2   1363 (Fed. Cir. 2015)).

3       L'Oreal also rejects Plaintiff's argument that the "photo guide" is more than an abstract

4   idea because this limitation "could not be performed by pen-and-paper methods." *Id.* at 10

5   (quoting Opposition at 5 (citing Compl. ¶ 63)).  L'Oreal asserts that Brightex "misses the point"

6   because "[t]he question is whether the device is 'invoked merely as a tool' for carrying out that

7   process."  *Id.*  (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)).

8   According to L'Oreal, "it is evident from the claims and the specification that all the photo guide

9   does is instruct users how to position their face for image capture—just as a dermatologist would

10  instruct a patient how to position their face for a visual inspection—and that a generic 'electronic

11  device' can be invoked as a tool for conveying those instructions."  *Id.* (quoting '358 Patent at

12  2:27–37).  Thus, the claimed "photo guide" is not "in any manner inventive[,]" L'Oreal contends.

13  *Id.*

14  **III.    ANALYSIS**

15      **A.    Legal Standards Under Rule 12(b)(6)**

16       A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

17  for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

18  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

19  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

20  is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

21  sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

22  that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

23       In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

24  takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

25  non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

26  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

27  would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

28  1990).  A complaint must "contain either direct or inferential allegations respecting all the material

United States District Court
Northern District of California

1   elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

2   *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

3   1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

4   of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5   (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion

6   couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

7   265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

8   'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

9   (alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the

10  plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S.

12  at 570).

13       **B.    Motion to Dismiss Based on Patent Eligibility Under Section 101**

14       Whether a claim recites patent-eligible subject matter under § 101 is a question of law.

15  *Procter & Gamble Co*, 288 F. Supp. 3d at 1010 (citations omitted).  While claim construction may

16  sometimes be necessary to determine whether claims are directed to patent-eligible material, it is

17  not an " 'inviolable prerequisite to a validity determination under § 101.' " *Id.*  (quoting *Bancorp*

18  *Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)).

19  Thus, "[w]here the court has a 'full understanding of the basic character of the claimed subject

20  matter,' the question of patent eligibility may properly be resolved on the pleadings." *Id.* (quoting

21  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349

22  (Fed. Cir. 2014)).

23       **C.    Application of *Alice* Test to the '358 Patent**

24            **1.    Step One: Whether the '358 Patent is Directed to An Abstract Idea**

25                 a.   Legal Standards

26       At step one of the *Alice* test, courts "consider the claims 'in their entirety to ascertain

27  whether their character as a whole is directed to excluded subject matter.' " *CardioNet, LLC v.*

28  *InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020) (quoting *McRO, Inc. v. Bandai Namco*

United States District Court
Northern District of California

*Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015))). "[T]he Court need not individually analyze every claim if certain claims are representative[,]" however.  *Procter & Gamble*, 288 F. Supp. 3d at 1016 (noting that "[o]ften, parties will agree that certain claims are representative for the purposes of a § 101 analysis.").

"Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright-line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework." *Id.*  at 1011 (citing *Alice*, 573 U.S. at 221; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)).  Thus, in determining whether the claims of a patent are directed to excluded subject matter, "courts have generally begun by 'compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases.' " *Id.*  (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)).

In *Procter & Gamble*, Judge Koh observed that "[t]wo of the U.S. Supreme Court's leading cases concerning the 'abstract idea' exception involved claims held to be abstract because they were drawn to longstanding, fundamental economic practices." *Id.* at 1012 (citing *Alice*, 573 U.S. at 219; *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).  In particular, in *Alice*, the Supreme Court found that claims "drawn to the concept of intermediated settlement, i.e., the use of a third party to mitigate settlement risk" were directed to a patent-ineligible abstract idea.  *Id.*  (citing *Alice*, 573 U.S. at 219).  In *Bilski*, the Supreme Court found that "claims drawn to 'the basic concept of hedging, or protecting against risk' were directed to a patent-ineligible abstract idea because '[h]edging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class.'" *Id.* (quoting *Bilski*, 561 U.S. at 611).

Further, because "information itself is intangible[,]" "the Federal Circuit has generally found claims abstract where they are directed to some combination of acquiring information, analyzing information, and/or displaying the results of that analysis." *Id.* (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094–95 (Fed. Cir. 2016) (claims "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected" were

United States District Court
Northern District of California

22

1   drawn to a patent-ineligible abstract idea); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350,

2   1354 (Fed. Cir. 2016) (claims directed to an abstract idea because "[t]he advance they purport to

3   make is a process of gathering and analyzing information of a specified content, then displaying

4   the results, and not any particular assertedly inventive technology for performing those

5   functions"); *In re TLI Commc'ns LLC*, 823 F.3d at 611 (claims were "directed to the abstract idea

6   of classifying and storing digital images in an organized manner")).

7         In cases involving "other types of computer-implemented claims[,]" courts have "taken

8   varied approaches to determining whether particular claims are directed to an abstract idea." *Id.* at

9   1012.  In a number of cases, the Federal Circuit has looked to whether the "claims 'purport to

10  improve the functioning of the computer itself,' . . . which may suggest that the claims are not

11  abstract, or instead whether 'computers are invoked merely as a tool' to carry out an abstract

12  process." *Id.* at 1012-1013 (quoting *Alice*, 573 U.S. at 225 and *Enfish*, 822 F.3d at 1336;  and

13  citing *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–60 (Fed. Cir. 2017); *McRO,*

14  *Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).  Courts have also

15  found that "claims directed to a 'new and useful technique' for performing a particular task were

16  not abstract." *Id.* (citing *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir.

17  2017); *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048, 1050 (Fed. Cir. 2016)

18  (holding that claims directed to "a new and useful laboratory technique for preserving

19  hepatocytes," a type of liver cell, were not abstract); *Diamond v. Diehr*, 450 U.S. 175, 187

20  (1981)).

21        Judge Koh notes that another "helpful tool" courts have used in conducting the step one

22  abstract idea inquiry "is consideration of whether the claims have an analogy to the brick-and-

23  mortar world, such that they cover a 'fundamental . . . practice long prevalent in our system.' " *Id.*

24  at 1013 (quoting *Alice*, 573 U.S. at 219).  For example, in *Intellectual Ventures I LLC v. Symantec*

25  *Corp.*, the Federal Circuit found that "an email processing software program to be abstract through

26  comparison to a 'brick-and-mortar' post office." *Id.* (citing 838 F.3d 1307, 1317 (Fed. Cir.

27  2016)).

28        Another factor courts consider in conducting *Alice*'s step one inquiry is whether the claims

United States District Court
Northern District of California

are directed at a "mental process or a process that could be done with pencil and paper." *Id.* (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016);  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016)).

b.   Application of Legal Standards

Applying the standards set forth above, the Court finds that the asserted claims of the '358 Patent are directed to an abstract idea at step one of the *Alice* test.

The Court begins its analysis by identifying the character of the asserted claims "as a whole." The Court finds that claim 16 is directed to: 1) obtaining a digital image of a person's face using a device with a camera that allows for the display of a photo guide telling the user how to position their face to capture the image; 2) using image processing to identify at least two skin characteristics of the user; 3) using stored information about populations of the same type to determine how far the user's measurements deviate from the norm as to the particular skin characteristics, that is, the relative severity of the user's skin characteristics; and 4) providing treatment recommendations for user skin characteristics with the highest severity rating.  Claim 18 depends from claim 16 and involves the same process but adds limitations by identifying specific skin characteristics, such as wrinkles, age spots and crows feet.

These claims are similar to the claims that the Federal Circuit and other Courts have found are directed at an abstract idea.  For example, in *Electric Power Grp., LLC v. Alstom S.A.*, the asserted claims described "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." 830 F.3d at 1351.  The Federal Circuit found that the claims were directed to an abstract idea because "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."  *Id.*  at 1354.  Similarly, in *In re TLI Commc'ns LLC Pat. Litig.*, the Federal Circuit found that a "patent relating to a method and system for taking, transmitting, and organizing digital images" was invalid under § 101 because it was "directed to the abstract idea of classifying and storing digital images in an organized

United States District Court
Northern District of California

24

1    manner." 823 F.3d 607, 609 (Fed. Cir. 2016).

2        The Court's conclusion is also supported by the *Procter & Gamble* case, which is closely

3    on point.  That case involved a patent entitled "Skin Imaging and Analysis Systems and Methods"

4    that "describe[d] and claim[ed] an apparatus and method for 'determining and displaying the

5    location of one or more analysis areas and defect areas associated with a digital image of human

6    skin.' " 288 F. Supp. 3d at 1006–1007.  The method described in the patent included 1) a

7    computer device acquiring a digital image of a person; 2) the selection of a "sub-image" for

8    analysis; 3) analysis of the sub-image to identify skin defects and determine their severity, which

9    included comparing the measurements associated with the user with data for similar populations;

10    and 4) displaying the results of the analysis to the user.  *Id.*  at 1007-1009. The Court concluded at

11    step one that the asserted claims were directed at the abstract idea of acquiring and analyzing

12    information, citing prior Federal Circuit cases, including *Electric Power Grp., LLC v. Alstom S.A.*

13    *Id.*  Further, it rejected the patentee's argument that the claims were directed to an improvement in

14    computer functionality and therefore not abstract.  *Id.*  at 1021-1023.

15        As discussed above, Federal Circuit case law points to the conclusion that here, as in

16    *Procter & Gamble*, the asserted claims are directed to the abstract idea of collecting and analyzing

17    information.  The Court also concludes that the '358 Patent, like the patent in *Procter & Gamble*,

18    does not claim any improvement in computer functionality.  Instead, Brightex asserts that the

19    "solution" the '358 Patent offers is that it "overcome[s] . . .  drawbacks in skin diagnostics and

20    improve[s] the consumer process of cosmetically improving a consumer's face" by "provid[ing]

21    access to skin diagnostics to address cosmetic improvements of a consumer's face" without the

22    need for them to undergo "the time-consuming and costly process of seeking advice from a skin

23    expert such as an aesthetician or dermatologist."  Opposition at 9.  But the Federal Circuit has held

24    that "improving a user's experience while using a computer application is not, without more,

25    sufficient to render the claims directed to an improvement in computer functionality." *Customedia*

26    *Techs., LLC v. Dish Network Corp*., 951 F.3d 1359, 1365 (Fed. Cir. 2020) (citing *Trading Techs.*

27    *Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092–93 (Fed. Cir. 2019); *see also Fortinet, Inc. v.*

28    *Forescout Techs., Inc*., No. 20-CV-03343-EMC, 2020 WL 6415321, at *6 (N.D. Cal. Nov. 2,

United States District Court
Northern District of California

2020) ("[T]he Federal Circuit has recently explained that'"[t]o be a patent-eligible improvement to computer functionality . . . the claims must be directed to an improvement to the functionality of the computer or network platform *itself*,' . . . and so go beyond mere 'incidental improvements to computer functionality' via refinement of the abstract idea [.]") (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)).

*Dental Monitoring SAS v. Align Tech., Inc.*, 2024 WL 2261931 (N.D. Cal. May 16, 2024), also supports the Court's conclusion at step one. That case involved two patents related to remote dentistry and the fitting of dental aligners, which are worn in sequence in order to reposition the patient's teeth. 2024 WL 2261931, at *1. The court explained that "[t]ypically, a dental practitioner must visually assess a patient's aligner at regular intervals to evaluate progress and determine if and when a patient should progress to the next aligner in the sequence, revert to a previous aligner, and so forth." *Id.* The patents at issue, however, disclosed "a method for acquiring an image of the dental arch of a patient" and "a method for guiding a patient to capture images of their dental arches and aligner fit in order to facilitate remote treatment." *Id.* The claims described methods that included: 1) acquisition of an image of the dental arch or the shape of the aligner; 2) analysis of the quality of the image using a "deep learning" device trained by use of a learning base; and 3) sending an information message regarding the quality of the image or the positioning of the "acquisition apparatus" relative to the user's dental arch or appliance. *Id.* at * 1-2.

The court found that although the learning process was described with "a great deal of particularity," the asserted claims, nonetheless, focused on the abstract idea of gathering and processing information. *Id.* at *4. It noted that the "[n]either claim nor specification details a novel (or any) algorithm or otherwise discloses an improvement to extant deep learning devices" and further observed that "[i]t is not enough to be the first to apply an abstract idea to a specific technological environment, such as a deep learning device." *Id.* The Court also observed that, according to the specification, it was "common practice" for dental practitioners to perform "assessments of aligner treatment via images transmitted to them by patients," which sometimes required them to notify patients of the need to retake pictures due to their poor quality. Thus, the

1   "information message" disclosed in the patents was analogous to the way this always had been

2   done. *Id.* The court found, "Moving beyond the field of dental aligners, it is beyond cavil that

3   'capture, analysis, critique, recapture' is a dialogue as old as photography itself." *Id.*

4          Brightex attempts to distinguish these cases by pointing to the fact that the asserted claims

5   of the '358 Patent include a "photo guide." According to Brightex, the photo guide recites a

6   "specific improved solution" that improved the relevant technology, converting the recited

7   electronic device into a specialized device.  The Court agrees with L'Oreal, however, that the

8   photo guide limitation, whether considered individually or as part of the claim as a whole, is

9   merely incidental to the acquisition of the digital image and is akin to a dermatologist instructing a

10  client on how to position their face for a visual inspection or to capture an image of the

11  individual's face. It is, in Judge Alsup's words, a method that is "as old as photography itself."

12  There is nothing in the claims or specification that suggests the "photo guide" is directed at

13  solving any technological problem or doing anything more than ensuring the user's face is

14  positioned so as to obtain a usable digital image. *See* '358 Patent at 2:33–37 ("Photo guide 202

15  instructs the user where to place her face in the image. Using photo guide 202, the user is able to

16  take an image of her face with preferred dimensions for use in the recommendation process."); *id.,*

17  claim 16 ("display a photo guide indicating how the user's face should be positioned…").

18  Therefore, the Court rejects Brightex's reliance on the "photo guide" to argue that the asserted

19  claims are not directed to an abstract idea.

20         For these reasons, the Court finds that the asserted claims of the '358 Patent are directed to

21  an abstract idea of collecting and analyzing information.

22

23         **2.   Step Two: Whether the Asserted Claims of the '358 Patent Contain an
               Inventive Concept**

24              a.   Legal Standards

25         Having determined that the '358 Patent is directed to an abstract idea, the Court must next

26  "determine whether the claims do significantly more than simply describe that abstract method."

27  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citing *Mayo Collaborative*

28  *Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77 (2012)).  In other words, the Court must

United States District Court
Northern District of California

27

1    "examine the limitations of the claims to determine whether the claims contain an 'inventive

2    concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Id.* (citing

3    *Alice*, 573 U.S. at 221) (quoting *Mayo*, 566 U.S. at 77)).

4    　　　　The Supreme Court has "made clear that transformation into a patent-eligible application

5    requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.' '" *Alice*,

6    573 U.S. at 221 (citing *Mayo*, 566 U.S. at 72). Thus, "it is . . . now standard for a § 101 inquiry to

7    consider whether various claim elements simply recite 'well-understood, routine, conventional

8    activit[ies].' " *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50

9    (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 225) (quoting *Mayo*, 566 U.S. at 73). However, "[t]he

10    inventive concept inquiry requires more than recognizing that each claim element, by itself, was

11    known in the art." *Id.* Rather, courts must also consider whether "an inventive concept can be

12    found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

13    "The object of the inquiry is the claim language: a district court may not rely on 'technological

14    details set forth in the patent's specification and not set forth in the claims to find an inventive

15    concept.'" *Dental Monitoring*, 2024 WL 2261931, at *7 (quoting *Intell. Ventures I LLC v.

16    Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable

17    Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017)).

18    　　　　Because the court must draw all reasonable inference in favor of the plaintiff at the

19    12(b)(6) stage of the case, a complaint with specific allegations plausibly alleging that the asserted

20    claim discloses a concept that was not "well-understood, routine, or conventional" is sufficient to

21    survive the pleading stage of the case. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882

22    F.3d 1121, 1129 (Fed. Cir. 2018); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir.

23    2018) ("Whether something is well-understood, routine, and conventional to a skilled artisan at the

24    time of the patent is a factual determination.") Thus, for example, in *Aatrix*, the Federal Circuit

25    found that the district court had erred in dismissing the plaintiff's complaint under § 101 where it

26    contained "concrete" factual allegations "that individual elements and the claimed combination

27    [were] not well-understood, routine, or conventional activity" and that "the claimed combination[ ]

28    [offered an] improvement to the functioning of the computer." *Id.* at 1128. Likewise, in

*Berkheimer*, the complaint was found sufficient to survive a Rule 12(b)(6) motion where it alleged specific facts showing that "the claimed combination improve[d] computer functionality" and pointed to sections of the specification that explained how "the claimed improvement increase[d] efficiency and computer functionality over the prior art systems." *Berkheimer v. HP Inc.*, 881 F.3d at 1369 (Fed. Cir. 2018).

### b.   Application of Legal Standards

Brightex contends the complaint adequately alleges that claim 16 discloses inventive concepts based on the "photo guide" and the "severity rating" limitations.[2]  It argues further that L'Oreal's challenge under § 101 fails because L'Oreal relies on factual assertions that contradict facts alleged in the complaint.  The Court is not persuaded by Brightex's arguments.

First, the Court rejects Brightex's contention that L'Oreal's arguments about what was routine and conventional at the time of the patent's issuance contradict the allegations in the complaint.  In particular, L'Oreal's statements in its moving papers about what dermatologists were doing at the time of the patent's issuance, namely, "inspect[ing] a person's face to identify characteristics that vary from the norm and, where the variance was sufficiently great, . . . prescrib[ing] treatment," Motion at 5, are entirely consistent with the allegations in the complaint. In particular, the Complaint describes the "deficient process" used by dermatologists in 2005, when "the skincare industry was far behind in using technology to improve its products and services."  Compl. ¶ 13.   According to Brightex, at that time "the industry was still visually comparing images before and after product application with no quantification of skin parameters. Visual grading was used, and books were published to train staff and dermatologists to align their grading scores."  *Id.*;  *see also id.*  ¶ 20 ("Prior to the 2007-time-frame, most skin analysis cosmetologists used visual grading techniques.").

Moreover, in paragraph 14, Brightex reiterates that Chhiber "researched the matter and determined that inspecting a face for characteristics and conditions required one to closely

---

[2]At the hearing, the parties agreed that dependent claim 18 does not supply any inventive concept not found in claim 16 and therefore, that the Court need only address claim 16 in conducting its step two analysis.

1    examine the skin for very small imperfections, which was the best way to conduct a useful

2    diagnosis." *Id.* ¶ 14.  There is no allegation that Chhibber's conclusion represented a discovery of

3    a new method; nor does Brightex contend that it was.  Instead, the implication of the allegation is

4    that Chhibber's conclusion reflected current best practices in the field of cosmetology at the time

5    of the issuance of the '358 Patent. Therefore, the Court rejects Brightex's argument that factual

6    questions preclude it from deciding whether the step two test is met on a Rule 12(b)(6) motion.

7        The Court further finds that neither the photo guide nor the severity limitation supplies an

8    inventive concept that transforms claims 16 into patentable subject matter. As discussed above, the

9    examiner found that the "photo guide" was a "technological solution and significantly more than

10   the abstract idea." Delacenserie Decl., Ex. A at 22 (citing *Bascom Global Internet Services v.

11   AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)). Neither the '358 Patent specification nor

12   the allegations in the complaint support that conclusion, however.  The specification describes the

13   "photo guide" in functional terms, as a feature of the "typical electronic device . . . used to capture

14   a user's image" that "instructs the user where to place her face in the image" so that "the user is

15   able to take an image of her face with preferred dimensions for use in the recommendation

16   process." '358 Patent, 2: 33-37. In Fig. 2A, it is depicted as a simple graphic in the shape of a

17   square frame that can be displayed on the device's camera to show the user where to position her

18   face when capturing an image.  *Id.*, Fig. 2A.  The specification does not allude to any

19   "technological problem" that the "photo guide" solved or identify anything unconventional about

20   its use in claim 16.

21       Similarly, while the complaint includes conclusory allegations about the "innovation" of

22   claim 16, including the allegation that it "recite a technical solution to a problem arising in the

23   realm of computing networks[,]" Compl. ¶ 59, there are no allegations in the complaint addressing

24   what specific technological problem the photo guide solved or explaining how the use of a photo

25   guide constituted an advance in computer technology.  Indeed, the complaint emphasizes that the

26   method disclosed in claim 16 of the '358 Patent was enabled "by the advanced cameras that smart

27   devices used" and thus did not require a specialized device. *See, e.g.,* Compl. ¶ 15.  In short, the

28   the photo guide in claim 16 simply performs a basic computer function that was "known" in the

1    art.  Furthermore, other than conclusory statements that the photo guide *in combination* with the

2    other claim limitations was inventive, Brightex has not explained how the claim as a whole

3    discloses any inventive concept that combined the photo guide with the other limitations in an

4    unconventional or innovative manner.  Therefore, the Court rejects Brightex's assertion that the

5    addition of the photo guide to claim 16 transformed the claim into something that is more than an

6    abstract idea.  *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613–14 (Fed. Cir. 2016).

7         The Court also rejects Brightex's assertion that the complaint sufficiently alleges that the

8    photo guide is inventive because it alleges that the function this feature performs "could not be

9    performed by pen-and-paper methods."  Opposition at 5 (citing Comp. ¶63), 13.  As Judge Koh

10   explained in *Procter & Gamble*, to determine whether a claim is directed to an abstract idea,

11   courts consider, "as the facts require[,]" " whether the claims are, in essence, directed to a mental

12   process or a process that could be done with pencil and paper." 288 F. Supp. 3d at 1013.  This is

13   closely related to "another helpful tool" in which courts consider whether claims "have an analogy

14   to the brick-and-mortar world, such that they cover a fundamental . . . practice long prevalent in

15   our system." *Id.* (internal quotation and citation omitted).  Here, Brightex's focus on the pen-and-

16   paper inquiry misses the mark.  While taking a picture with an electronic device that uses a photo

17   guide is not a mental process that can be performed using pen and paper, it does have a very

18   obvious real-world analogy of positioning a person's face so that it can be inspected or

19   photographed by a cosmetologist – a practice that is implicit in the allegations of the complaint.

20   *See* Compl. ¶ 14 ("Chhibber researched the matter and determined that inspecting a face for

21   characteristics and conditions required one to closely examine the skin for very small

22   imperfections, which was the best way to conduct a useful diagnosis.").

23        The Court also finds unpersuasive Brightex's reliance on the "severity rating" to show that

24   claim 16 includes an innovative concept.  Brightex makes this argument only in passing in its

25   Opposition brief, *see* Opposition at 17, but presumably, the argument is based on the allegations in

26   the complaint that the patentee responded to the rejection by the Examiner "by pointing out that

27   the invention is a novel computerized method of providing prioritized skin treatment

28   recommendations to users based on a severity rating calculation."  Compl. ¶ 61;  *see also id.* ¶ 62

United States District Court
Northern District of California

31

United States District Court
Northern District of California

("The patentee further responded that the pending claims of the application for the `358 Patent contain meaningful limitations that represent a sufficiently inventive concept, and that they recite specifically how the recommendations are selected and prioritized based on a specifically calculated severity rating."). The Federal Circuit has recognized, however, that "acquiring, analyzing, and displaying information is an abstract idea. Because information itself is an intangible, amassing information produces an intangible, and applying mathematical algorithms to sort or analyze that information is essentially a mental process." *Procter & Gamble*, 288 F. Supp. at 1018 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)). As the Federal Circuit explained in *Electric Power Group*, "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." 830 F.3d at 1354. Thus, the Court here concludes that the disclosure in claim 16 of a method to evaluate the severity of the user's skin characteristics is ancillary to the abstract process of collecting and analyzing data and does not supply an inventive concept that transforms claim 16 into patentable subject matter.

For these reasons, the Court finds that the asserted claims do not disclose an inventive concept at step two of the *Alice* test.

**IV.    CONCLUSION**

For the reasons stated above, the Court finds that the asserted claims of the '358 Patent are invalid under 35 U.S.C. § 101. Therefore, the Motion is GRANTED. Plaintiff's claim for infringement of the '358 Patent (Claim One) is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  March 6, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge