UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTEX BIO-PHOTONICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>L'OREAL USA, INC.,<br><br>Defendant. | Case No. 24-cv-07919-JCS<br><br>**ORDER GRANTING RULE 54(b) MOTION**<br><br>Re: Dkt. No. 39 |

## I. INTRODUCTION

In this action, Plaintiff Brightex Bio-Photonics, LLC ("Brightex") accuses Defendant L'Oreal USA, Inc. ("L'Oreal USA") of infringing two of its patents: U.S. Patent No. 9,842,358 ("the `358 Patent") and U.S. Patent No. 9,542,595 ("the `595 Patent"). On March 6, 2025, the Court granted L'Oreal's motion to dismiss under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) as to the '358 Patent and dismissed Brightex's claim of infringement of that patent with prejudice. Dkt. no. 32 ("March 6 Order"). Brightex now brings a Rule 54(b) Motion ("Motion"), asking the Court to enter final judgment on its claim of infringement of the '358 Patent so that it can pursue an immediate appeal without waiting for the Court to adjudicate Brightex's claim of infringement of the '595 Patent. The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing set for May 14, 2025** pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Complaint[2]

According to Brightex's founder and Chief Executive Officer, the '358 and '595 Patents "relate generally to providing skin treatment recommendations to an end user by analyzing a digital image of the user, identifying relevant skin characteristics of the user, and selecting a skin treatment recommendation for the user based on the identified skin characteristics." Compl. ¶ 81. While the general subject matter of the two patents is the same, they are not related and have different specifications and claims. *See generally* Compl. Ex. 1 ('358 Patent) & 2 ('595 Patent). Brightex alleges that L'Oreal is infringing the '358 and '595 Patents on various websites and applications. Compl. ¶¶ 85, 107. A number of the websites and applications are alleged to infringe both patents. *Id.*

### B. Contentions of the Parties

#### 1. The Motion

In the Motion, Brightex asserts that final judgment should be entered as to the '358 Patent under Rule 54(b) because "[t]here is no dependence or interrelationship between the Court's March 6, 2025 patent ineligibility determination for the '358 Patent and the on-going claims of the '595 Patent infringement claims in this matter[.]" Motion at 1. Brightex further asserts that "the nature of the Court's March 6, 2025 Dismissal Order means that no appellate court would have to decide the same issues more than once even if there are subsequent appeals relating to another asserted patent." *Id.*

First, Brightex contends the Court's March 6 Order is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 4 (quoting W.*L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs., Inc.*, 975 F.2d 858, 861 (Fed. Cir. 1992); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956); *Tessera, Inc. v. Toshiba Corp.*, No. 15-CV-02543-BLF, 2017 WL 11002227, at *3 (N.D. Cal. Mar. 6, 2017)).

Next, Brightex argues that there is no just reason for delay because the claims are separate

---

[2] A more detailed description of the allegations in the complaint can be found in the Court's March 6, 2025 Order.

2

and therefore, the appellate court would not have to decide the same issue more than once even if there were subsequent appeals. *Id.* at 5 (citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)). Brightex points to the Court's March 6 Order, asserting that the Court "focused exclusively on patent eligibility of the '358 Patent under Section 101, as interpreted under the *Alice* decision and its progeny" and that its "Section 101 patent eligibility analysis of the '358 Patent was solely based on the '358 Patent itself – nothing else." *Id.* According to Brightex, "[t]here is no dependence or interrelationship between the Court's determination on patent ineligibility of the '358 Patent under Section 101 and any appellate issues that might be raised in the future with respect to the '595 Patent" because "any appellate issues relating to claim construction, infringement, validity, or enforceability of the '595 Patent would be irrelevant to the appellate consideration of the '358 Patent under Section 101." *Id.* at 5-6.

Brightex further contends its request for entry of Rule 54(b) judgment is supported by equitable factors. *Id.* at 6 (citing *Lexos Media IP, LLC v. EBay Inc*., 3:23-cv-06314-RFL, Dkt. 138 (N.D. Cal. May 13, 2024) (Motion Ex. 1)). First, it asserts that the March 6 Order has placed a "cloud" over its '358 Patent and therefore, it should be allowed to appeal the Court's order immediately. *Id.* at 7.

Next, Brightex points out that the life of a patent is limited and so a delayed appeal will reduce the value of its patent even if it is ultimately found to be valid on appeal. *Id.* Brightex suggests L'Oreal may not be committed to expeditious litigation of the '595 Patent infringement claim, pointing to L'Oreal's request for a 30-day extension on the deadline to file an answer as to that claim. *Id.*

Third, Brightex contends "granting this Rule 54(b) request would not prejudice Defendant L'Oreal because L'Oreal will need to address the Section 101 ruling on the '358 Patent on appeal either sooner or later." *Id.* at 8. Brightex points to *Tessera, Inc. v. Toshiba Corp*., arguing that L'Oreal will not be prejudiced by entry of a 54(b) judgment in this case "because both 'parties are sophisticated technology companies . . . , neither party points to concrete consequences that granting or denying certification would have on its interests[,] [and] [t]here is also no suggestion that certification would protect or destroy one party's ability to eventually get what it is owed.' "

3

1  *Id.* (quoting *Tessera*, No. 15-CV-02543-BLF, 2017 U.S. Dist. LEXIS 223671 at *22 (N.D. Cal.
2  Mar. 6, 2017)).

### 2. Opposition

In its Opposition, L'Oreal does not challenge Brightex's assertion that the first requirement for entry of a 54(b) judgment is met, namely, that as to the '358 Patent, the March 6 Order is, in effect, a final judgment that leaves nothing to be decided. It argues, however, that allowing an immediate appeal of the March 6 Order is not in the interest of judicial economy or supported by the equities. Opposition at 1, 5-6.

First, L'Oreal rejects Brightex's contention that the two patent infringement claims are "wholly independent" of one another, pointing out that Brightex "has accused many of the same websites of infringing both patents." *Id.* at 1. L'Oreal acknowledges that "Brightex might argue that different aspects of these websites are accused for each patent," but argues that "both patents relate to the same basic functionalities—analyzing or manipulating images of a person's face for the purpose of recommending products." *Id.* Furthermore, L'Oreal asserts, "any infringement trial on the '595 patent will require fact and expert testimony and evidence as to the structure, operation, and use of the accused websites, including what features and functionalities drive demand for or profitability of the websites (e.g., by comparing the accused features with other patented and unpatented features)." *Id.* Because the same testimony and evidence would also be necessary if the dismissal under § 101 of the '358 Patent were overruled and that claim went to trial, L'Oreal asserts that if "Brightex wants to appeal the '358 patent dismissal now, judicial economy warrants staying the remainder of the case in the interim." *Id.*

Alternatively, L'Oreal argues, the Court should deny Brightex's motion outright. *Id.* L'Oreal informs the Court that it "expects to obtain summary judgment on [the '595 infringement claims] (perhaps also based on unpatentable subject matter) and, when it does, the '358 and '595 issues can be addressed in a single appeal, as opposed to inefficient piecemeal appeals."[3] *Id.*

---

[3] L'Oreal filed its Opposition one day before it filed its Answer to the '595 Patent infringement claim and therefore states in its Opposition that it "anticipates asserting defenses and counterclaims, including invalidity for ineligible subject matter, that will likely be decided as issues of law." *Id.* L'Oreal's answer, filed the next day, includes a defense and a counterclaim

4

L'Oreal argues that the case law does not support Brightex's request for a 54(b) judgment, asserting that "district courts have denied Rule 54(b) motions in the same context as the instant case – where claims under one of multiple patents have been dismissed as being directed to ineligible subject matter." *Id.* at 2-4 (citing as examples *NantWorks, LLC v. Niantic, Inc.*, No. 20-CV-06262-LB, 2023 WL 2633211 (N.D. Cal. Mar. 24, 2023) and *Maxell, Ltd. v. VIZIO, Inc.*, No. 21-CV-6758-GW-DFMX, 2022 WL 2167459, at *1 (C.D. Cal. May 13, 2022)). L'Oreal further asserts that "[t]he authorities cited by Brightex do not concern the early dismissal of claims under §101 and are easily distinguishable." *Id.* According to L'Oreal, *Lexos Media IP, LLC v. eBay, Inc.*, No. 23-CV-06314-RFL (N.D. Cal. May 13, 2024), cited by Brightex, is distinguishable because in that case, the court found that a Rule 54(b) judgment was warranted both because the issue subject to appeal was unique *and* because the plaintiff was pursuing other cases related to the same patent in "various courts." *Id.* at 4. According to L'Oreal, the existence of other pending cases is a factor that is missing in this case. *Id.*

L'Oreal also asserts that "the other decisions cited by Brightex are not patent infringement cases and are also distinguishable on other grounds." *Id.* at 4. In particular, it argues that in *Tessera,* entry of a Rule 54(b) judgment as to the dismissal of a claim based on interpretation of a license agreement was justified because the remaining claims also turned on interpretation of that agreement. *Id.* In contrast, L'Oreal contends, "[i]n the instant case, the issues on the '595 patent do not hinge on the Court's decision on the '358 patent (even if there are overlapping issues on at least damages), and Brightex has not agreed to stay the remainder of the case." *Id.*

L'Oreal also distinguishes *Curtiss-Wright Corp.*, asserting that the 54(b) judgment in that case was based on equitable factors, namely, that "the defendant's only defense to owing the plaintiff $19 million was the interpretation of a release clause in the agreement[;]" "[a]fter granting summary judgment that the release clause did not apply, the district court certified that

---

challenging patentability of the '595 Patent under 35 U.S.C. §§ 101, 102, 103, and/or 112. Dkt. no. 42. L'Oreal rejects Brightex's suggestion that its request for a 30-day extension to file its Answer indicated that it might not want to "proceed forward," representing that the extra time was required to investigate the "detailed assertions [in the Complaint] regarding past interactions between Brightex and L'Oreal." *Id.* at 2 n. 4.

5

1  decision under Rule 54(b) because the plaintiff 'would suffer severe daily financial loss from non-
2  payment of the $19 million judgment because current interest rates were higher than the statutory
3  prejudgment rate.'" *Id.* (citing 446 U.S. at 6). According to L'Oreal, there is no such issue here.
4  *Id.*

5        L'Oreal also argues that Brightex will not be prejudiced by the delay associated with denial
6  of the Motion, asserting that "this type of delay is inherent to any litigation" and that if Brightex
7  prevails, it will be able to recover any increased damages caused by the delay in the form of pre-
8  and post- judgment interest and post-judgment royalties. *Id.* at 5.

### 3. Reply

10        In its reply, Brightex argues that L'Oreal's request for a stay of litigation of the '595 Patent
11  turns Brightex's 54(b) request "upside down[,]" ensuring that there will be an extended delay with
12  respect to litigation of part of the case. Reply at 1. Brightex asserts that L'Oreal's request for a
13  stay if the Court grants its 54(b) request is intended to prejudice Brightex and should be rejected as
14  inconsistent with the goals of Rule 54(b). *Id.*

15        Brightex contends one goal of Rule 54(b) is to "allow[ ] unrelated portions of a case to
16  proceed forward on separate tracks without staying any portion of the case." *Id.* at 2. According
17  to Brightex, L'Oreal "acknowledge[s] that the remaining '595 Patent issues are unrelated to the
18  issues decided by this Court on the '358 Patent, and the resolution of the remaining asserted patent
19  does not 'hinge on the Court's decision on the '358 Patent.' " *Id.* (quoting Opposition at 4).
20  Brightex further asserts that L'Oreal "acknowledges that the Court issued an 'early dismissal' of
21  the '358 Patent from this case, which means the '358 Patent issues will continue to be unaddressed
22  for an extended period of time in the absence of a Rule 54(b) Order." *Id.* (quoting Opposition at
23  4).

24        Brightex argues that the Court should reject L'Oreal's " 'what if' scenarios that could arise
25  in the future where the analysis of each asserted patent could 'match up' to duplicate efforts at the
26  Federal Circuit or this Court." *Id.* at 2-3. It contends that even if one of these scenarios arises,
27  there will be no duplication of effort by the Federal Circuit or this Court. *Id.* at 3. As to L'Oreal's
28  argument that "the remaining '595 Patent could be subject to a Section 101 analysis or judgment,

6

which would duplicate the Court's prior Section 101 analysis of the '358 Patent[,]" Brightex argues that the Section 101 analysis for the two patents will be different because they have different specifications and claims. *Id.* at 3.

Likewise, Brightex contends, the infringement analysis under Section 271 as to the two patents will be different. *Id.* at 4. Brightex points out that there is not "complete identity between the accused websites showing infringement of the '595 Patent versus those identified as showing infringement of the '358 Patent[,]" as L'Oreal recognizes in its brief. *Id.* (citing Opposition at 1). As to the websites that are accused of infringing both patents, Brightex points out that L'Oreal acknowledges that "different aspects of these websites are accused for each patent." *Id.* (quoting Opposition at 9). Therefore, Brightex asserts, "the same analysis, evidence and testimony would not be considered by the Federal Circuit or this Court" even if infringement of the two patents is addressed on separate tracks. *Id.*

Brightex rejects L'Oreal's suggestion that a Rule 54(b) judgment is less likely to be appropriate with respect to claims that are dismissed early in the case. *Id.* at 4 (citing Opposition at 4 ("authorities cited by Brightex do not concern the early dismissal of claims under §101 and are easily distinguishable.")). Brightex contends "an 'early dismissal' of one of two asserted patents makes the grant of a Rule 54(b) Order more appropriate to avoid the situation where unrelated portions of a case are apt to languish for longer periods of time, possibly years, without moving toward a final resolution." *Id.*

### III. ANALYSIS

#### A. Legal Standard

Rule 54(b) allows a district court to direct entry of final judgment as to one or more of the claims while others remain pending if the court expressly determines that there is no just reason for delay. *See* Fed. R. Civ. P. 54(b). The Supreme Court has established a two-step process for district courts to determine whether entry of judgment on a claim under Rule 54(b) is warranted. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7–8 (1980). First, the judgment must be final with respect to one or more claims. *See id.* A district court's judgment is final where it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."

*Catlin v. United States*, 324 U.S. 229, 233 (1945). Second, "the district court must go on to determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8.

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in setting such as this, a district court must take into account judicial administrative interests as well as the equities involved." *Id.* The district court should consider, among other things, "[t]he separateness of the claims for relief[,]" W.*L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs., Inc*., 975 F.2d 858, 862 (Fed. Cir. 1992) (citing *Curtiss-Wright*, 446 U.S. at 8), "and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8.

**B.     Discussion**

There is no dispute that the Court's dismissal with prejudice of Plaintiff's claim for infringement of the '358 Patent under 35 U.S.C. § 101 is a final adjudication of that claim and therefore meets the first requirement for entry of judgment under Rule 54(b). The only remaining issue is whether Brightex has established that there is no just reason for delay. The Court finds that it has.

The Court begins its analysis by reviewing the handful of patent cases cited by the parties involving requests for Rule 54(b) judgments. While none of these cases is binding or even directly on point, a review of how other courts have addressed similar requests is instructive.

L'Oreal relies primarily on *NantWorks, LLC v. Niantic, Inc*., No. 20-CV-06262-LB, 2023 WL 2633211, at *2 (N.D. Cal. Mar. 24, 2023) and *Maxell, Ltd. v. VIZIO, Inc*., No. 21-CV-6758-GW-DFMX, 2022 WL 2167459, at *1 (C.D. Cal. May 13, 2022). In *NantWorks*, the court granted a motion for judgment on the pleadings as to one of multiple patents in the case ("the '518 Patent"), finding that it was directed to an abstract idea and therefore unpatentable. 2023 WL 2633211, at *1. The plaintiff sought to bring an immediate appeal of that order, either under 28 U.S.C. § 1292(b) or under Rule 54(b) but the court rejected the request. *Id.* at *2. The court pointed to the fact that it had already dismissed claims based on another patent in the same case on the pleadings on the basis of unpatentability and that the plaintiff had not sought an immediate

appeal as to *that order*. *Id.* The court opined that this "rais[ed] doubt that dismissal of some patent-infringement claims in a (pure) patent-infringement suit creates a 'need' for immediate appeal." *Id.* The court also noted that it had "construed some claim terms common to the '518 patent and the remaining patent, including that for the general technology at issue (augmented reality)" and concluded that this "show[ed] conceptual overlap between the patents that creates some efficiency for the Federal Circuit's considering just one appeal." *Id.*

In *Maxell*, the plaintiff asserted seven patents and the defendant challenged three of them based on unpatentability under § 101. 2022 WL 2167459, at *1. The court found that two of the three patents ("the '893 and '007 Patents") were unpatentable as a matter of pleading but reserved as to the third patent ("the '369 Patent"), deferring consideration of patentability as to that patent until after claim construction. *Id*. The plaintiff sought entry of judgment under Rule 54(b) as to the two dismissed patents, arguing that " 'there [was] no substantial overlap between the claims that would be decided on appeal and the remaining claims in this case,' as patent eligibility turns on the unique language in each patent." *Id.* at *2. The plaintiff also pointed to the early stage of the case and argued "that any delay in its appeal would substantially prejudice Maxell, as two of the patents in its portfolio have been 'rendered valueless.'" *Id.* at *2.

The court in *Maxell* rejected the plaintiff's request for entry of a 54(b) judgment for three reasons. First, the court pointed to the fact that the patentability of the '369 Patent was still pending. *Id.* The court explained:

> The Court is concerned that if the '369 Patent is also found ineligible after the Markman hearing, which has yet to be scheduled, then the Plaintiff would file another motion for entry of separate and final judgment. Depending on timing, this could lead to two separate appeals. Such a result would clearly be inefficient and cumbersome to both this Court and the Federal Circuit. For this reason alone—the possibility that Plaintiff could have two separate Section 101 dismissal appeals to the Federal Circuit for the same case—the Court would deny Plaintiff's request.

*Id.*

Second, the court pointed to the fact that "even if the '369 Patent [was] ultimately found to be ineligible, at least four other patents remain[ed]" in the case. *Id.* at *3. The court noted that "the issues related to these patents of interest include both validity and infringement." *Id.* Thus, it

9

1    reasoned, "[e]ven if the Federal Circuit reverses the Section 101 rulings for the '893 and '007

2    Patents, any eventual appeal as to the validity and infringement of the remaining patents would

3    return to the Federal Circuit." *Id.* "The Court decline[d] to subject the Federal Circuit to the

4    potential for double review" of the case. *Id.*

5          Finally, the court found that allowing the plaintiff to appeal the court's Section 101

6    decisions "in the normal course [would] not harm [the plaintiff]." *Id.* The court observed that the

7    plaintiff "chose to bring this lawsuit alleging the seven patents at issue and, therefore, accepted the

8    risk that some of these patents may be found to be patent ineligible or invalid." *Id.* The court

9    added, "any decision from the Federal Circuit in an appeal will create a more complicated and

10   piecemeal record from which the parties and the Court would have to proceed." *Id.*

11         Brightex relies on *Lexos Media IP, LLC v. EBay Inc.*, 3:23-cv-06314-RFL, Dkt. 138 (N.D.

12   Cal. May 13, 2024). In *Lexos*, the plaintiff asserted infringement claims based on three patents:

13   U.S. Patent Nos. 5,995,102 ("the '102 patent"), 6,118,449 ("the '449 patent") and 7,975,241 ("the

14   '241 patent"). 23-cv-06314-RFL, dkt. no. 121 at p. 1. The court dismissed the plaintiff's claim for

15   infringement of the '241 Patent, finding that that patent was invalid because it could not claim a

16   priority date of June 25, 1997 and therefore was anticipated by the '102 Patent. *Id.* The plaintiff

17   subsequently asked the court to enter judgment as to the '241 Patent, dkt. no. 123, and the court

18   granted that request. Dkt. no. 138. The court found that the '241 patent infringement was finally

19   adjudicated and that there was no just reason for delay, reasoning:

20   > While the asserted patents all share common subject matter, the dispositive priority claim issue is unique to the '241 patent. No similar anticipation arguments have been raised regarding the other patents, the Court did not decide whether the '241 patent, if valid, would have been infringed, and thus no "appellate court would have to decide the same issues more than once even if there were subsequent appeals." Id. (citing *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980)). Prompt appellate review of the '241 patent would also benefit judicial economy as Lexos is currently pursuing several cases related to this patent in various courts. *See, e,g., Lexos Media IP, LLC v. Overstock.com, Inc.*, Case No. 22-cv-02324 (D. Kan.). Finally, eBay faces little risk of prejudice. "Both parties are sophisticated technology companies . . . , neither party points to concrete consequences that granting or denying certification would have on its interests[, and t]here is also no suggestion that certification would protect or destroy one party's ability to eventually get what it is owed." *Tessera, Inc. v. Toshiba Corp.*, No. 15-CV-02543- BLF, 2017

10

WL 11002227, at *6 (N.D. Cal. Mar. 6, 2017). *Id.* at 2.

In determining whether the facts here warrant entry of Rule 54(b) judgment, the Court considers both the equities and judicial efficiency. The Court finds that the equities do not strongly point in favor of either side. Brightex is concerned that there is a "cloud" over the '358 Patent that will persist until it can pursue an appeal – which may not be for a considerable length of time if the Court does not enter a Rule 54(b) judgment. But as the court in *Maxell* reasoned, Brightex chose to bring this lawsuit alleging that two of its patents were infringed and knew that one or both of its patents might be found to be invalid. And as the court found in *Tessera*, "[b]oth parties are sophisticated technology companies that are experienced in adapting to the sometimes slow-moving nature of complex litigation." 2017 WL 11002227, at *6. Conversely, an immediate appeal of the Court's March 6 Order will not prejudice L'Oreal because that appeal raises unique issues that will not need to be relitigated if there is a second appeal, as discussed below.

As to judicial efficiency, the Court finds that there is no just reason for delay because it is undisputed that the issues on the '595 patent do not hinge on the Court's decision on the '358 patent. Rather, the Court's disposition in the March 6, 2025 Order turns on a discrete analysis of the claims and specification of the '358 Patent under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). In particular, the Court applied the two-step analysis under *Alice*, asking first whether the asserted claims were directed to an abstract idea and then considering whether they contained an "inventive concept." As the claims and specification of the '358 and '595 Patents do not overlap, this analysis is unique to the '358 Patent; in other words, even if L'Oreal were to assert that the '595 Patent, like the '358 Patent, is directed to unpatentable subject matter, the analysis would be different. Therefore, as in *Lexos*, entry of a Rule 54(b) judgment as to the '358 Patent will not result in duplicative appeals to the Federal Circuit even assuming that the Court concludes on summary judgment that the '595 Patent is invalid under § 101.[4]

---

[4] The Court notes that L'Oreal did not bring an *Alice* motion as to the '595 Patent and has not represented that it intends to challenge the validity of that patent on the basis that it claims unpatentable subject matter. Nor does it argue that if it prevails on summary judgment based on invalidity as to the '595 Patent, Brightex's appeal as to the '595 Patent would duplicate the appeal it seeks to pursue as to the '358 Patent.

1    Although L'Oreal attempts to distinguish *Lexos* on the ground that there were lawsuits
2    pending in other courts relating to the patent at issue, the court in that case did not cite these other
3    lawsuits (or even specifically identify them) as the primary reason for finding that there was no
4    just reason for delay. Therefore, the Court is not persuaded that this distinction warrants reaching a
5    different conclusion.

6    The Court also does not find L'Oreal's reliance on *NantWorks* to be persuasive.  In that
7    case, the court found that there was "conceptual overlap" between the dismissed patent and the
8    remaining patents based on common "claim terms." 2023 WL 2633211, at *2.  Here, in contrast,
9    L'Oreal has not pointed to common claim terms that might result in duplicative issues being
10   addressed by the Federal Circuit in successive appeals.  Furthermore, the court in *NantWorks*
11   appeared to rely, in part, on the fact that the plaintiff had not requested a Rule 54(b) judgment as
12   to the prior dismissal in that case of another patent infringement claim on the same ground, which
13   led the court to question the plaintiff's need to pursue an immediate appeal.  Here, there are no
14   such facts.[5]

15   *Maxell* is also distinguishable as the court had dismissed infringement claims as to two
16   patent claims but reserved its decision as to a third claim that was subject to a similar challenge,
17   raising the possibility that the plaintiff would bring another Rule 54(b) motion as to the third, even
18   while four more patents remained to be litigated.  As this case involves only two patents, the
19   *Maxell* court's concern about the "complicated and piecemeal record" facing both the district court
20   and the Federal Circuit is less salient here.

21   For these reasons, the Court finds that there is no just reason for delay in entering judgment
22   as to the '358 Patent. The Court also concludes that a stay of litigation as to the '595 Patent is
23   unwarranted.  While it is possible the Federal Circuit will reverse this Court's dismissal of the
24   '358 Patent and remand for further proceedings on infringement, at this point the Court can only

---

[5] To the extent the *NantWorks* court may have implied that entry of a Rule 54(b) judgment as to a dismissed patent in a multi-patent case might, as a *general* rule, be improper, the undersigned respectfully disagrees with that suggestion.  The Court has found no authority to support such a bright-line rule.  Rather, the legal standards set forth above indicate that the court's exercise of discretion in this context depends on the specific circumstances of the case.

12

speculate as to how the Federal Circuit may rule on Brightex's appeal

## IV.     CONCLUSION

For the reasons stated above, the Motion is GRANTED. The Clerk is instructed to enter a separate partial judgment in favor of L'Oreal under Rule 54(b) of the Federal Rules of Civil Procedure as to Brightex's claim of infringement of U.S. Patent No. 9,842,358, which the Court dismissed with prejudice in its March 6, 2025 Order.

**IT IS SO ORDERED.**

Dated: May 7, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge